# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1758 | **DATE** | November 2, 2004 |
| **CASE TITLE** | *Shelly Y. Kaplan v. City of Chicago* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, the Court GRANTS Defendant City of Chicago's Motion to Strike [98-1] and GRANTS the Motion for Summary Judgment [97-1] on all claims but the failure to accommodate claim. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | NOV 04 2004 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | 108 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | |
| RTS | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHELLY KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 99 C 1758 |
| v. | ) | |
| | ) | Hon. Blanche M. Manning |
| CITY OF CHICAGO | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shelly Kaplan, a Chicago police officer, brought this action against the City of Chicago ("the City") alleging discrimination/harassment (based on her religion, Judaism) and retaliation, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). The present matter comes before this Court on the City's Motion to Strike and Motion for Summary Judgment. For the reasons set forth herein, the Court GRANTS the Motion to Strike and GRANTS in part and DENIES in part the Motion for Summary Judgment.

## MOTION TO STRIKE

This Court will first rule on the City's Motion to Strike Portions of Kaplan's Northern District of Illinois Local Rule 56.1 Response and attached affidavit. The City contends that parts of Kaplan's response should be struck because she: (1) failed to cited to specific portions of the factual record; (2) included "additional facts" within her responses; (3) cited to non-existent factual records; and (4) responded with citations to conclusory, self-serving, and inadmissible evidence. Before addressing these specific contentions, this Court will first discuss the rules governing the obligations of the non-moving party under Local Rule 56.1.

Local Rule 56.1(b) requires that the responding party submit a "concise response" to the movant's statement, which must contain "[a] response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to affidavits, parts of the record, and other supporting materials relied upon. . . ." Local Rule 56.1(b)(3)(A) (emphasis added).[1] A "general denial" to the movant's statement will not suffice, the nonmovant "must cite specific evidentiary materials justifying the denial." Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000).[2]

Furthermore, the non-movant's response is not "the place for purely argumentative denials." Id. Additional factual arguments should be submitted pursuant to Local Rule 56.1(b)(3)(B), which requires the responding party to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon . . . ." Local Rule 56.1(b)(3)(B) (emphasis added). Rule 56.1(b)(3)(B) "provides the only acceptable means" for the opposing party to put forth additional facts. Midwest Imports, Ltd. v. Coval, 71 F.3d 1311, 1316-17 (7th Cir. 1995) (emphasis added).

Failure to comply with Local Rule 56.1 is not a "harmless technicality." Waldridge v.

---

[1]    The movant's statement of material facts is governed by Local Rule 56.1(a), which requires that the party file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law" consisting of "short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in each paragraph. Failure to submit such a statement constitutes grounds for denial of the motion." Local Rule 56.1(a)(3).

[2]    In addition to the local rules, this Court's Standing Order requires that Local Rule 56.1(b) responses "shall reproduce the paragraph of the opposing party's Local General Rule 56.1 submission to which they respond."

Am. Hoechst Corp., 24 F.3d 918, 924 (7th Cir. 1994). Not complying with these requirements

results in the admission of the movant's facts. Local Rule 56.1(b)(3)(B)("[a]ll material facts set

forth in the statement required of the moving party will be deemed admitted <u>unless controverted</u>

<u>by the statement of the opposing party</u>"); <u>Malec</u>, 191 F.R.D. at 584. The court is not required to

scour the record to unearth material factual disputes or evidentiary support for a party's position.

<u>See, e.g., Carter v. Am. Oil Co.</u>, 139 F.3d 1158, 1162 (7th Cir. 1998). The parties must supply

"specific references" to each factual assertion put forth or contested. <u>Malec</u>, 191 F.R.D. at 583-

84. This requirement means that the party must include citations to facts which show the page

(or paragraph) of the factual source. <u>Id.</u> Citations to depositions or affidavits generally will not

suffice. <u>Id.</u> Accordingly, an opposing party who does not properly contest the movant's Rule

56.1(a)(3) facts is considered to have admitted those facts, to the extent that they are properly

supported by the record. Rule 56.1(b)(3); <u>Midwest Imports, Ltd.</u>, 71 F.3d at 1312; <u>Tobey v.</u>

<u>Extel/JWP, Inc.</u>, 985 F.2d 330, 333 (7th Cir. 1993).

Additionally, although Rule 56.1 permits citations to affidavits, the non-movant may not

raise a disputed material fact "by submitting an affidavit containing conclusory allegations which

contradict plain admissions in [a] prior deposition." <u>See Adusumilli v. City of Chicago</u>, 164 F.3d

353, 360 (7th Cir. 1998). "[W]here a deposition and affidavit are in conflict, the affidavit is to be

disregarded" and the court should only consider the deposition, "unless it is demonstrat[ed] that

the statement in the deposition was mistaken." <u>Amadio v. Ford Motor Co.</u>, 238 F.3d 919, 926

(7th Cir. 2001).

Here, after carefully reviewing Kaplan's Local Rule 56.1(b) Response, this Court

concludes that Kaplan has completely disregarded the requirements set forth above. The Court

will thus strike much of her response and deem the corresponding paragraphs in the City's Rule 56.1(a) statement admitted to the extent they are supported by the factual record.[3] Specifically, the Court will strike portions of Kaplan's response which she terms "additional facts" because she failed to follow Local Rule 56.1(b)(3)(B)'s requirements for asserting additional facts. Instead of submitting "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon," as required by Local Rule 56.1(b)(3)(B), Kaplan improperly added what she termed "additional facts"to her responses.[4] See Midwest Imports, Ltd., 71 F.3d at 1317 (Rule 56.1(b)(3)(B)"provides the only acceptable means" for the opposing party to put forth additional facts"). Additionally, the Court will strike portions of Kaplan's response where she failed to provide any citations to the factual record.[5] These paragraphs include but are not limited to: 9, 10, 17, 18, 26, 33, 34, 36, 38, 39, 42, 43, 48, 50, 55-58, 60, 68, 71-73, 79-81, 83, 85-86, 89, 90, 92, 94, 97-99, 101, 109, 111, 112, 117-119, 125, 128, 129, 135, 138, 141, 142, 146-149, 151, 156, 157, 160-164, 166, 169, 170, 175, 176, and 184.

Furthermore, as detailed below, the Court will disregard Kaplan's responses which contain argumentative answers, cite to non-existent factual records, or cite to improper or

---

[3]     In striking Kaplan's Local Rule 56.1(b) submission, this Court notes that this is a 1999 action. While the Court understands the serious result of granting the motion to strike, it also must make clear that it will not allow parties to simply ignore the important requirements of Local Rule 56.1.

[4]     The Court will also strike portion of Kaplan's responses which are not termed "additional facts" but which amount to additional facts.

[5]     The Court also notes that Kaplan failed to comply with this Court's Standing Order by failing to "reproduce the paragraph[s]" of the City's Local Rule 56.1(a) statement to which she was responding.

inadmissible factual records, such as portions of Kaplan's affidavit, which contradict her deposition testimony, unnoticed depositions, and statements from undisclosed witnesses.

## MOTION FOR SUMMARY JUDGMENT

With the above rulings in mind, the Court will now address the City's Motion for Summary Judgment.

## BACKGROUND[6]

Kaplan, who is Jewish, has been employed as a Chicago police officer since 1991. In 1993, she requested to be put on "limited duty" due to back problems and arthritis. According to Kaplan's doctor, she could not be placed in a position which required prolonged standing, walking, running, or lifting more than 20 pounds. The City granted her request and placed Kaplan in light duty positions, including working at the City's 311 non-emergency center as a call taker. While on limited duty, Kaplan received her regular salary and benefits.

### <u>Request for Injured on Duty Status</u>

While working as a call taker at the 311 center, Kaplan made several requests to be put on "injured on duty status," which would have permitted her to take time off with full pay and benefits without using her "sick days." Whether an employee is eligible for injured on duty status is determined by the City's Committee on Finance.

Kaplan's first two requests for injured on duty status, made in July 1995, were based on her contention that the "air" at the police station had made her sick. The City denied both of

---

[6]     The facts in the Background section are derived from the parties' Local Rule 56.1 statements and other pleadings. As explained above, this Court is striking a number of Kaplan's responses and deeming the facts to the corresponding paragraphs in the City's Local Rule 56.1(a) statement admitted, subject to review of this Court. The Court will also disregard Kaplan's "additional facts" which do not comport with Local Rule 56.1 or are otherwise inadmissable.

those requests in August of 1995, after conducting an investigation and concluding that there was no substantive proof that her alleged injuries occurred on the job. In August and November of 1996, Kaplan again sought injured on duty status based on the air quality at another police station. Those requests were likewise denied. In March of 1996, Kaplan again applied for injured on duty status, claiming that she injured herself while exercising at lunch. After conducting an investigation, the City denied this claim based on a lack of proof that the alleged injuries were sustained in the performance of her employment.

Kaplan further requested injured on duty status in August of 2000, for a swollen finger, in March of 2001, after she tripped on her book bag, and in June of 2003, after she allegedly slipped on a wet floor. As with her other claims, the City denied each of these requests after conducting an investigation and concluding that there was no substantive proof that her alleged injuries occurred on the job.

### EEOC Complaints

While working for the City, Kaplan filed nine complaints with the Equal Employment Opportunity Commission ("EEOC"). She brought her first complaint in December of 1995 for disability discrimination based on the City's failure to grant her injured on duty status after she allegedly became ill from the air at the police station. In September of 1996, Kaplan filed another EEOC charge alleging that the City retaliated against her for filing her first EEOC charge.

In December of 1996, Kaplan made a third EEOC complaint again alleging retaliation and disability discrimination and also, for the first time, religious discrimination. Over the next five years (1997 to 2002), Kaplan made six more EEOC complaints alleging retaliation, disability discrimination, and religious discrimination based on the City's alleged failure to

accommodate her religious practices.

**Promotional Exams**

Due to operational requirements and costs, the City only offers promotional tests to police officers on Saturdays. Unfortunately, for Kaplan, as a Jewish person who observes the Jewish Sabbath, her religious practices prevent her from taking Saturday exams before sundown. According to police procedure, the City worked with Kaplan to accommodate her religious beliefs. On at least two occasions, Kaplan took the promotional exams at a time other than regularly scheduled. For example, the City permitted Kaplan to take the 1993 sergeant exam after the conclusion of her Sabbath. To ensure the integrity of the test, a fellow police officer accompanied Kaplan throughout the day. In 1994, the City again accommodated Kaplan by allowing her to take the detective promotion exam before the start of the Jewish Sabbath, which begins at sundown on Friday. To ensure the integrity the test, after taking the exam on Friday afternoon, Kaplan stayed in a hotel with a fellow police officer, who also accompanied her on Saturday, until the regularly scheduled test was completed.

Despite having reached an accommodation agreement in 1993 and 1994, Kaplan and the City were unable to reach an arrangement for her to take promotional tests in 1998, 1999, and 2002. As with the previous tests, the City offered to accommodate Kaplan by permitting her to take the promotion tests Saturday evening. To take the rescheduled test, however, the City required that Kaplan permit a Chicago policewoman and a female employee of the testing service to accompany her to her synagogue and watch her there the entire day while she attended Sabbath services and then accompany her to take the test that evening. The City contends that Kaplan had to be accompanied and watched all day to ensure the integrity of the tests. Although she had previously agreed to this or similar arrangements, Kaplan rejected these offers as unreasonable.

-7-

### Suspensions

The City suspended Kaplan twice – once for five days for "abuse of medical roll" and for 30 days for unauthorized leave of absence. Under police regulations, when an employee makes a report of being injured on duty, she must report to the medical department within 24 hours and inform her commander. The City contends that in August of 1996 Kaplan failed to follow these requirements. As a result, the office of internal affairs started an investigation and made a recommendation to a three-member panel, which handed down a five day suspension.

The City again suspended Kaplan, this time for 30 days, after she failed to obey a direct order from her supervisor and left duty without permission. This violation, like her prior one, was investigated by an officer in the internal affairs unit, who interviewed witnesses and made factual findings and a recommendation to a three-member panel, which made the actual disciplinary decision. After appealing the suspension, an independent arbitrator found that it was justified.

### Tuition Reimbursement

The City has a tuition reimbursement program, for up to two credit hours, for police officers who attend accredited higher educational institutions. Reimbursement, however, is discretionary in that officers who have poor performance records may not be reimbursed. In 1996, Kaplan enrolled at Kent Law School in Chicago. After reimbursing Kaplan for several semesters tuition, the City denied her reimbursement request in February of 1997 because at that time she was not working "full tours of duty."

### Procedural History

Kaplan filed her initial complaint in this action in March of 1999. In March of 2000, this

Court granted in part the City's motion to dismiss. On December 12, 2000, however, this Court vacated this order, based on a recent Seventh Circuit decision. After protracted discovery, Kaplan filed an Amended Complaint on April 17, 2003, alleging religious discrimination and retaliation in violation of Title VII. The City now seeks summary judgment on all claims in the Amended Complaint.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994). A genuine issue of material fact is one that might affect the outcome of the lawsuit, and factual disputes that are irrelevant will not be considered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court must construe the alleged facts in a light most favorable to the party opposing the motion. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962); Dale v. Chicago Tribune Co., 797 F.2d 458, 460 (7th Cir. 1986).

The moving party carries the initial burden of establishing that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Becker v. Tennenbaum Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party must do more than "show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and may not merely rest upon the allegations or denials in its pleading,

but instead must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. If the evidence presented is "merely colorable" or is not "significantly probative," summary judgment may be granted. Id. at 250-51 (citations omitted). The court considers the record as a whole, and draws all reasonable inferences in the light most favorable to the nonmoving party. Regner v. City of Chicago, 789 F.2d 534, 536 (7th Cir. 1986).

Courts are particularly cautious in granting summary judgment in employment discrimination cases because issues of intent and credibility are usually involved. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993); McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 370-71 (7th Cir. 1992). Summary judgment is inappropriate if the court must balance conflicting indications of motive and intent. Stumph v. Thomas & Skinner, Inc., 770 F.2d 93, 97 (7th Cir. 1985). An employer can only prevail at the summary judgment stage if the record shows that a reasonable trier of fact must conclude that the employment decision was not based on discrimination. Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 893-94 (7th Cir. 1996).

**ANALYSIS**

The City contends summary judgment is proper on the grounds that: (I) many of Kaplan's claims fall outside the relevant statute of limitations period and the scope of her EEOC complaint; and (II) she has failed to establish a prima facie case for: discrimination, failure to accommodate, harassment, or retaliation. The Court will discuss each of these contentions in turn.

**I.      Statute of Limitations**

Before bringing a Title VII action "a complainant must file a charge with the EEOC within 300 days of [an] allegedly discriminatory act and failure to do so renders the charge untimely." Filipovic v. K & R Express Systems, Inc., 176 F.3d 390, 396 (7th Cir. 1999). Here, Kaplan filed the relevant EEOC charge on December 23, 1996.[7] Therefore, any allegations that occurred before February 26, 1996 (300 days prior to her EEOC complaint) are time barred.

Kaplan, however, contends that these claims are nevertheless actionable under the "continuing violation theory," which permits courts, in certain circumstances, to consider acts outside the limitation period. Pomozal v. City of Highland Park, No. 00 C 7472, 2003 WL 1057813, at *14 (N.D. Ill. Mar. 7, 2003) ("the continuing violation theory . . . allows a [p]laintiff to seek relief for allegedly discriminatory acts that occurred outside the limitations period by linking them to acts within the period").

In support or her argument, Kaplan relies on National R.R. Passenger Corp. v. Morgan,

---

[7]      The Court notes that Kaplan filed two EEOC charges prior to December 23, 1996. These charges, however, alleged discrimination based on disability, not religion, which is the only ground asserted in the Amended Complaint. Therefore, the Court will construe her December 23, 1996 charge as the relevant charge her for purposes of applying the 300 day statute of limitations period.

536 U.S. 101, 115-18 (2002), which held that courts may consider acts outside of the limitations period for hostile environment claims but not for claims alleging discrete acts of discrimination. The distinction is based on the finding that:

> [a] hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice . . . . The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

National R.R., 536 U.S. at 117. Thus, for hostile environment claims, "[t]he 300-day limitation of Title VII is irrelevant . . . as long as plaintiff filed his charge within 300 days of an occurrence of any act that is part of his hostile work environment claim." Sutton v. Illinois Dept. of Transp., No. 99 C 0265, 2003 WL 1719996, at * 1 (N.D. Ill. Mar. 31, 2003). See also Tressel v. Combined Ins. Co. of America, No. 01 C 6231, 2003 WL 1626528, at *8 (N.D. Ill. Mar. 27, 2003)(the continuing violation theory can be "used so long as one discriminatory act falls within the limitations period").

In contrast to claims for hostile environment, with "discrete retaliatory or discriminatory acts . . . . [e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate unlawful employment practice," which, unlike a hostile environment claim, which by its nature is ongoing, "occur[s] on the day that it happen[s]." National R.R., 536 U.S. at 115-16. Consequently, "if the employee knew, or with the exercise of reasonable diligence should have known, that an act, once completed was discriminatory, the employee must sue upon that act within the relevant statutory period." Tinner v. United Ins. Co. of America, 308 F.3d 697, 707-08 (7th Cir. 2002).

A discrete act is one that an employee knows or should know (with the exercise of reasonable diligence) is discriminatory. Id. Discrete acts are those which "cannot be reasonably linked together into a single chain, a single course of conduct to defeat the statute of limitations." Id. In National R.R., the Supreme Court listed "termination, failure to promote, denial of transfer, or refusal to hire" as discrete acts that are easy to identify. 536 U.S. at 115-16. Following National R.R., courts have held that the following constitute discrete acts: failing to reimburse an employee for expenses, requiring an employee to travel, and forcing an employee to produce a death certificate for missing work to attend a funeral of a relative. Cox v. American Drug Stores, 2003 WL 1903985, at *7 (N.D. Ill. Apr. 17, 2003).

Here, this Court finds that the following allegations in the Amended Complaint constitute "discrete acts" of discrimination (and thus fall within the 300 day filing requirement):

- turning down Kaplan's request for time off to attend religious functions in November 1995;

- denying her overtime in November 1995 and 1994;

- reprimanding her "for being argumentative" in February 1995;

- failing to promote her to dispatcher in May 1995; and

- refusing to take any remedial action after she complained about anti-Semitic comments in February of 1992.

Therefore, because the above alleged discrete acts of discrimination occurred before February 26, 1996 (300 days prior to her EEOC complaint), they are time bared.[8]

---

[8] Kaplan also alleges, without providing any dates, that "she was precluded from receiving promotions, tuition reimbursement and overtime as a result of receiving unwarranted low performance ratings." To the extent that any of these allegations occurred before February 26, 1996, the Court will not consider them. She also alleges in her Response to the Motion for Summary Judgment, without providing any citations to any factual record or Local Rule 56.1 submission, that in 1993, she was "placed on limited duty," denied "injured on duty" status, put

Although Kaplan does not specifically allege a hostile environment claim in her Amended Complaint, she now contends that her earlier allegations are not time-barred because they fall within the <u>National R.R.</u> exception for hostile environment claims. As explained below, however, Kaplan has failed to present sufficient evidence to put forth a hostile environment claim. Therefore, this Court holds that the continuing violation theory is inapplicable to Kaplan's discrimination claims and that acts prior to the limitations periods are time-barred.

## II.  Scope of Kaplan's EEOC Complaint

As a general rule, a plaintiff may only include claims in her judicial complaint that were included in the EEOC charge. <u>Cheek v. W. & S. Life Ins. Co.</u>, 31 F.3d 497, 500 (7th Cir. 1994). This rule serves the dual purpose of allowing the EEOC and the employer an opportunity to settle the dispute and to give the employer warning of the complained of conduct. <u>Id.</u> Because EEOC charges are frequently completed by laypersons and not lawyers, however, a claim that was not asserted in the EEOC charge may still be cognizable in a judicial complaint if the claim is "like or reasonably related" to the allegations in the EEOC charge or could reasonably be expected to grow out of an EEOC investigation. <u>Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.</u>, 538 F.2d 164, 167 (7th Cir. 1976).

Here, the City contends that Kaplan's allegations that she was wrongfully denied overtime and "injured on duty status" are barred because they are not set forth in her EEOC charge. While these specific allegations are not in her EEOC charge, because they are alleged to be motivated by her religion, it is irrelevant that they were not mentioned in her EEOC charge,

---

in buildings that made her sick, punished for using too many sick days, and wrongfully suspended. Even if this Court were to consider these allegations, which it is not, because they fail to comply with Local Rule 56.1, they would be construed as discrete acts and subject to the 300 day bar.

which alleges religious discrimination.

With the above rulings in mind, the Court now turns to the City's contention that Kaplan has failed to put forth sufficient evidence to support her claims for discrimination, failure to accommodate, hostile environment, and retaliation.

## III.     Religious Discrimination

To establish a prima facie case of discrimination, a plaintiff must show that: (1) she belongs to a protected group; (2) she performed her job satisfactorily; (3) she was subjected to an adverse employment action; and (4) the employer treated similarly situated employees more favorably. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See also Venter v. City of Delphi, 123 F.3d 956, 972-73 (7th Cir. 1997) (applying the McDonnell Douglas burden shifting test to a religious discrimination claim).

Once made, the prima facie case creates a rebuttable presumption of discrimination, and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Leffel v. Valley Fin. Servs., 113 F.3d 787, 792 (7th Cir. 1997). The defendant's burden at this point is one of production only, not one of persuasion. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142 (2000). To satisfy this burden, the defendant need only offer "admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). To show a legitimate, non-discriminatory reason for its conduct, a defendant need not show that it had a good reason for its conduct, but only that its reason was not discriminatory. Timm v. Mead Corp., 32 F.3d 273, 275 (7th Cir. 1994).

Here, the City contends that Kaplan has failed to show that: (A) she suffered an adverse

employment action; (B) the City treated similarly situated employees more favorably; and (C) the City's proffered legitimate reason for its conduct was pretextual. The Court will discuss each of these contentions in turn.

### A.    Adverse Employment Action

The Seventh Circuit broadly defines adverse employment action as:

> a material adverse change in the terms and conditions of employment [which is] more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993).

This inclusive definition, however, is not without limit. "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" Id. (quoting Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996)). Thus, while an employee's subjective experience is not unimportant to this analysis, neither is it the defining variable in determining whether discrimination has occurred. Uhl v. Zalk Josephs Fabricators, Inc., 121 F.3d 1133, 1137 (7th Cir. 1997) ("Facts, not an employee's perceptions and feelings, are required to support a discrimination claim").

Moreover, poor treatment of an employee alone is not enough to establish that the employer is discriminating or retaliating against the employee. As noted by the Seventh Circuit, "Title VII is not directed against unpleasantness per se but only . . . against discrimination in the conditions of employment." Carr v. Allison Gas Turbine Div., Gen. Motors Corp., 32 F.3d 1007,

1009 (7th Cir. 1994). See also Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001) (not all unwelcome work experiences are adverse; adverse actions are more than disruptive inconveniences or altered responsibilities); Oest v. Ill. Dept. Corrections, 240 F.3d 605, 612 (7th Cir. 2001) (trivial occurrences are not adverse). Courts "are in no position to measure, or much less evaluate, whether an employer speaks to its workers too harshly." Robin v. Espo Engr. Corp., 200 F.3d 1081, 1091 (7th Cir. 2000). Instead, courts are "empowered to decide legal issues alone, and not the troubling social as well as ethical questions that go well beyond the legal issues" and must instead leave "these greater social questions to be decided by the political branches of government." Id. at 1092. In evaluating an employer's conduct, a court may not sit as a "super-personnel department," but must limit itself to determining whether the employee's protected conduct was a "substantial or motivating factor" in the employer's decision to take the adverse action alleged. Stagman v. Ryan, 176 F.3d 986, 1002 (7th Cir. 1999). Unfair reprimands, negative performance reviews, or job transfers to less skilled positions do not in themselves constitute adverse employment actions. Grube v. Lan Indus. Inc., 257 F.3d 723, 729 (7th Cir. 2001); Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994).

Here, Kaplan contends that the following constitute adverse employment actions: (1) failing to put her on "injured on duty status" after she suffered "work-related injuries" in March 1996 and in 1999; (2) investigating her for "excessive injury claims" in August and November of 1996; (3) refusing to allow her to file "an injury on duty report" in September 1996; (4) not permitting her to "return to work" in November 1996; (5) rejecting her request for tuition reimbursement; and (6) "stripp[ing] of her police powers and requir[ing] [her] to stop

working."[9] Because actions that result in loss of pay generally constitute adverse employment actions, this Court finds that the claims for "injured on duty status," suspension, and tuition reimbursement constitute adverse employment actions. The Court, however, finds that Kaplan's allegation that the City improperly investigated her for excessive use of injury claims is not an adverse employment action because it did not materially affect the terms or conditions of her employment.

### B. Treatment of Similarly Situated Employees

The City further contends that Kaplan has failed to present sufficient evidence that the City treated her less favorably than similarly situated police officers who were not in her protected class – e.g., Jewish. To meet the similarly situated requirement, the plaintiff must show that "there is someone who is directly comparable to her in all material respects." Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). This requirement is crucial, because "without it a plaintiff would only have to point to one . . . employee who was treated better than he . . . [which] would be meaningless, especially with respect to large corporations." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618-19 (7th Cir. 2000).

In determining whether other employees are "similarly situated," the court "must look to all relevant factors," the number of which depend on the context of the case. Radue, 219 F.3d at 617. Some of the relevant factors include whether the employees "dealt with the same supervisor," were "subject to the same standards," and had comparable "experience, education and qualifications," provided that the employer took these factors into account when making

---

⁹       Although Kaplan sets forth other alleged adverse employment actions in her Response to the Motion for Summary Judgment, as explained above this Court will not consider these actions because of Kaplan's failure to follow Local Rule 56.1 procedures or to file an EEOC charge within 300 days of the alleged incident.

employment decisions. Id. at 617-18.

Here, Kaplan has failed to present any evidence that the City treated her less favorably than similarly situated police officers who were not in her protected class. In her Rule 56.1(b) response, Kaplan points to several employees who are alleged to be "similarly situated." According to Kaplan, these individuals, like her, were police officers and were injured on duty after breathing the "bad air" in the police station. These employees, however, unlike Kaplan, were given "injured on duty status." The only evidence to support this contention, however, is a sworn statement of police officer Robert Williams, which does not support this factual assertion.

Moreover, even if Williams' statement did provide factual support, it was taken after the close of discovery and without notice to the City and thus is inadmissible. Also, the names of these alleged similarly situated officers who Kaplan now puts forward were never identified by her, either in response to written discovery or in response to questions at her deposition.[10] The fact that Kaplan is trying to squeeze in testimony from these witnesses well after the close of discovery is even more egregious given that Kaplan, in response to a Rule 37 motion, agreed to provide the names of all witnesses and persons with knowledge of her claims. (See Docket Entry No. 77, at 2.)

Accordingly, this Court finds that Kaplan has failed to make a prima facie case because she has not put forth any evidence of similarly situated individuals.

---

[10]     At her deposition, Kaplan testified that she could not name any officers with whom she worked that were granted "injured on duty status" for similar injuries.

## C.    Pretext

Even if Kaplan had put forth sufficient evidence for a prima facie case, the City contends that summary judgment is appropriate because she has failed to show that the City's proffered legitimate reason for its conduct was pretextual.  Under McDonnell Douglas, once a prima facie case of employment discrimination is made, the burden then shifts to the defendant to proffer a "legitimate, non-discriminatory reason" for the adverse employment action.  Leffel, 113 F.3d at 792.  To satisfy this burden, the defendant need only offer "admissible evidence which would allow the trier of fact to rationally conclude that the employment decision had not been motivated by discriminatory animus."  Burdine, 450 U.S. at 257.  To show a legitimate, non-discriminatory reason for its conduct, a defendant need not show that it had a good reason for its conduct, but only that its reason was not discriminatory.  Timm, 32 F.3d at 275.  Only if the plaintiff successfully shows pretext will the court find discrimination and deny the defendant's motion for summary judgment.  McDonnell Douglas, 411 U.S. at 807.

Here, the City has offered a legitimate reason for each of Kaplan's remaining claims – failure to put Kaplan on "injured on duty status," refusal to reimburse her for tuition expenses, and wrongfully suspending her.  For example, for each time the City denied Kaplan's request for "injured on duty status," it did so based on the fact that there was not sufficient proof that Kaplan's injuries were incurred on the job.  These decisions were made by the City's Committee on Finance, which reviews injury claims from both the police and fire departments.  The two employees who reviewed Kaplan's requests had no dealings or knowledge of her outside of reviewing her injury claims.  In response to these proffered reasons, Kaplan has failed to put forth any admissible evidence showing that she was actually injured on the job or that the City's decision was in any other way pretextual.

-20-

Likewise, each time the City suspended Kaplan it was based on her failure to follow written rules and regulations. For example, the City suspended Kaplan for 30 days after she failed to obey a direct order from her supervisor and left duty without permission. This violation, like her other violations, was investigated by an officer in the internal affairs unit, who interviewed witnesses and made factual findings and a recommendation to a three-member panel, which made the actual disciplinary decision. Other than simple denials, Kaplan has offered no specific evidence that the City's proffered legitimate reasons are pretexual. Indeed, an independent arbitrator upheld this suspension after Kaplan filed a grievance with the union.

As for refusing to reimburse Kaplan for tuition, the City contends that it denied Kaplan's request because she was on medical leave and not working full-time. Kaplan does not dispute this reason except to state that it was pretextual. Without more, Kaplan cannot meet her burden.

Accordingly, this Court finds that even if Kaplan established a prima facie case, she has failed to meet her burden under McDonnell Douglas in that she failed to rebut the City's legitimate reasons for its employment decisions.

**IV.    Reasonable Accommodation**

Kaplan also contends that the City violated Title VII by failing to reasonably accommodate her religious beliefs by scheduling "promotional exams" on Saturdays (the day of the Jewish Sabbath). Title VIII requires employers to "reasonably accommodate an employee's religious observance or practice unless [the employer] can demonstrate that such an accommodation would result in an undue hardship to the employer's business." Rodriguez v. City of Chicago, 156 F.3d 771, 775 (7th Cir. 1998). With regard to the scheduling of tests, the EEOC requires that where an employee cannot take an exam because of her religious practices, the employer has a duty to "accommodate the employee . . . unless undue hardship would result."

29 C.F.R. § 1605.3.

A "reasonable accommodation" of an employee's religious beliefs is not one which is supposed to satisfy the employee's "every desire." Wright v. Runyon, 2 F.3d 214, 217 (7th Cir. 1993). Instead, the accommodation need only "eliminate[] the conflict between employment requirements and religious practices." Id. The court's determination of what is reasonable in a particular case "must be made in context of the unique facts and circumstances of the case." Rodriguez, 156 F.3d at 776 n.7. Once the employer shows that it has "reasonably accommodated the employee's religious needs," the inquiry is complete. Wright, 2 F.3d at 217. The employer need not address alternative measures suggested by the employee if it has already offered a reasonable accommodation. Id.

In Minkus v. Metropolitan Sanitary Dist. of Greater Chicago, 600 F.2d 80, 81-82 (7th Cir. 1979), a Jewish employee brought a Title VII action against his employer alleging failure to accommodate his religious beliefs by scheduling a civil service exam on Saturday. The employee's religious beliefs precluded him from taking the exam on any Saturday. Id. The employer denied the employee's request to retake the exam at another time because it contended that to do so would expose it to "undue hardship" in that it would be required to break Illinois law, be exposed to the threat of litigation, and face additional costs. Id. In rejecting these contentions and reversing the district court, the Seventh Circuit held that summary judgment on the "undue hardship" issue was incorrect because "whether an employer can reasonably accommodate a person's religious beliefs without undue hardship is a question of fact." Id. at 81. See also Gordon v. MCI Telcom. Corp., 791 F. Supp. 431, 435 (S.D.N.Y. 1992) (in denying summary judgment in failure to accommodate case, the court held that the "employer must present evidence of actual undue hardship and may not rely on speculation or hypothetical

-22-

hardship").

Here, the City asserts that it offered to reasonably accommodate Kaplan by permitting her to take the promotion tests Saturday evening – after the Jewish Sabbath, which ends at sundown on Saturday. The City's offer, however, was not this simple. To take the promotional test on Saturday evening, the City required that Kaplan permit a Chicago policewoman and a female employee of the testing service to accompany her to her synagogue and watch her there the entire day while she attended Sabbath services and then accompany her to take the test that evening. The City contends that Kaplan had to be accompanied and watched all day to ensure the integrity of the tests. While this Court agrees that it is important to ensure the integrity of the promotional exams, whether it was reasonable for two persons, including a policewoman, to actually come into Kaplan's synagogue and watch her and the congregation for the entire day is a question of fact. The Court can think of a number of less intrusive but no more costly measures by which the City could have ensured the integrity of its exams – e.g., simply having the observers wait outside the synagogue. Accordingly, this Court DENIES summary judgment as to this claim.

**V.     Hostile Work Environment Claim**

The City has also moved for summary judgment on Kaplan's claim that the religious harassment was so pervasive that it created a hostile work environment. To establish a prima facie case for a hostile environment claim, a plaintiff must show: (1) harassment because of her membership in a protected class, Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 81 (1997), that (2) was severe and pervasive enough to alter the plaintiff's working conditions, Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986), (3) which was unwelcome, id. at 68, and (4) the employer did not act promptly to effectively correct or prevent the harassment. Saxton v. American Tel. & Tel. Co., 10 F.3d 526, 535-36 (7th Cir. 1993).

-23-

In Meritor, the Supreme Court held that "[f]or ... harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." 477 U.S. at 67. The Court further explained in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116-17 (2002), that "when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." A discriminatory abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Harris v. Forklift, 510 U.S. 17, 22 (1993).

While the Supreme Court has been sympathetic to harassment claims, it has also expressed the desire to limit Title VII's applicability to conduct which is actually hostile and discriminatory: "the plaintiff must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted *discrimination* because of [membership in the protected class]." Oncale, 523 U.S. at 81 (emphasis in original).

In determining whether conduct is severe and pervasive enough to alter the conditions of employment and create a hostile work environment, courts consider both the actual effect of the conduct on the plaintiff (the subjective test) and what the effect would be on a reasonable person in the plaintiff's position (the objective test). Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674 (7th Cir. 1993).

Whether conduct is objectively hostile or abusive must be determined "by looking [at the conduct under] all the circumstances." Harris, 510 U.S. at 23. Factors that are relevant in determining whether a reasonable person would find conduct hostile are the frequency of the

-24-

conduct, its severity, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it interferes with the employee's work performance. Id. The Seventh Circuit has held that isolated and/or off-hand remarks or incidents are insufficient to establish a hostile work environment. Filipovic v. K&K Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999) (four national origin related comments made over the course of more than a year not sufficient to create a hostile environment); Rabinovitz Pena, 89 F.3d 483, 489 (7th Cir. 1996) ("an employee may not be unreasonably sensitive to his working environment"); Saxton, 10 F.3d at 535 ("inaccessibility, condescension, impatience, and teasing" were "'merely offensive'"); North v. Madison Area Assn. for Retarded Citizens – Dev. Centers Corp., 844 F.2d 401, 409 (7th Cir. 1988) (sporadic use of racial epithets and slurs were insufficient to support a Title VII claim). Repeated instances of such conduct, however, may be aggregated to support a hostile environment claim. See,e.g., Hostetler v. Quality Dining, Inc., 218 F.3d 798, 808 (7th Cir. 2000) ("[t]here is no magic number of incidents required to establish a hostile environment").

Here, this Court finds that Kaplan has failed to put forth sufficient facts to show that she was subjected to a pervasive and abusive work environment because of her religion. In the Amended Complaint, Kaplan alleges that "[t]hroughout her career with the Chicago Police Department, [she] has been subject to discriminatory terms and conditions because of her religion, Judaism." Kaplan, however, makes reference to only three events (over the course of 13 years on the police force) which specifically pertain to her religious beliefs. In February of 1992, she allegedly complained to her "commander" about "anti-Semitic harassment." The commander, however, refused to take any action and told Kaplan she "had been branded a 'troublemaker.'" (Am. Compl. at ¶ 5(b).) Kaplan also alleges that in 1994, her supervisor denied her request for overtime, he made a "derisive comment about [Kaplan's] religious observance." (Id. at ¶ 5(d).)

-25-

Finally, Kaplan alleges that in January and June of 2002, the City failed to reasonably accommodate her religious belief in scheduling a make-up promotional test for her. (Id. at ¶ h.) Assuming each of these allegations to be true, this Court finds that they were not severe or frequent enough to constitute a hostile environment claim under the standard set forth above.

Moreover, even if this Court were to accept the facts which Kaplan has not properly put forth in her Rule 56.1(b) response, the Court would still find that she has failed to set forth sufficient facts to establish a prima facie case for a hostile environment claim. These additional allegations, many of which have no basis in any factual record, are isolated, innocuous, and were, for the most part, not directed at Kaplan's religious beliefs, but rather were typical employee banter. For example, Kaplan contends that in 1992, her training officer "invented inexplicable religious conversations and contradictory statements in order to get rid of [Kaplan] as a trainee." According to Kaplan, this "probably provided sufficient fuel to the anti-Semitic members of the CPD to create a pattern of anti-Jewish discrimination." The only pattern that Kaplan identifies, however, is that although her supervisors gave her Friday evenings and Saturdays off, they told other officers that she was getting these days off because of her religion. Her supervisors also allegedly compared her to "herpes" and called her a "slickster" and told her she was "beggaring time off." She also points to other random comments such as a fellow officer telling Kaplan that he "worked like a Jewish slave" and other officers singing "Christian hymns." While the above comments may have been unpleasant for Kaplan, they were neither severe nor prevalent enough to constitute hostile environment under the law.

Accordingly, this Court grants summary judgment as to Kaplan's claim for hostile work environment.

## VI.     Retaliation

The City has also moved for summary judgment on Kaplan's claims for retaliation. The Seventh Circuit has established "two ways" for a plaintiff to make a prima facie case for retaliation under Title VII – "the direct method and the indirect method." Durkin v. City of Chicago, 341 F.3d 606, 613 (7th Cir. 2003).[11] Under the direct method, the plaintiff must present evidence of: "(1) a statutorily protected activity; (2) an adverse action by the employer; and (3) a causal connection between the two." Sitar v. Indiana Dept. of Trans., 344 F.3d 720, 728 (7th Cir. 2003).

Where the plaintiff "has no actual evidence of . . . retaliation, but just some suspicious circumstances," she may use the indirect method, which is modeled after McDonnell Douglas. Stone v. City of Indianapolis Public Utilities Div., 281 F.3d 640, 643 (7th Cir. 2002). Under the indirect method, the plaintiff must show that: "(1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse action from the employer; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." Sitar, 344 F.3d at 728. If the plaintiff meets these requirements, the burden

---

[11]     Title VII (42 U.S.C. § 2000e-3(a)) provides that:
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

shifts to the defendant to articulate a legitimate reason for its actions. Id. If the defendant meets

this burden, then the plaintiff must show that its proffered reason is pretextual. Id. If the plaintiff

cannot show pretext, it cannot proceed with its retaliation claim and summary judgment is

appropriate. Id.

Here, the City contends that Kaplan has not established a prima facie case under either the

direct or indirect method because she failed to show that: (A) there is any causal connection

between her alleged complaint and the alleged adverse employment actions; (B) she was treated

less favorably than similarly situated employees who did not engage in the protected activity; and

(C) the City's proffered legitimate reasons for its employment decisions were pretextual. As

discussed above, this Court has already found that Kaplan has failed on the similarly situated and

pretextual requirements, therefore, the Court will only discuss the causal connection argument.

To establish a causal connection, a plaintiff must show that her protected activity (e.g.,

complaining about the religious harassment) and the adverse employment actions "were not

wholly unrelated." See Franzoni v. Hartmarx Corp., 300 F.3d 767, 772 (7th Cir. 2002). To meet

this requirement, the plaintiff must put forth specific evidence showing that her complaint led to

or was a major factor in the adverse employment action – "speculation" will not suffice. See

Haywood v. Lucent Tech., Inc., 323 F.3d 524, 532 (7th Cir. 2003). Although temporal proximity

is not strictly determinative, "the employer's adverse employment action should follow fairly

soon after the employee's protected expression." Franzoni, 300 F.3d at 773. See also Filipovic

v. K&R Express Sys., Inc., 176 F.3d 390, 398 (7th Cir. 1999).

Here, Kaplan contends that she made two EEOC complaints in 1996 – on September 6

and December 23 – and that "[i]t was in exactly that time period that P.A. Garcia investigated

three [complaints] against [her], sustained them and meted out progressive punishment." The

problem with this assertion is that it is nothing more than speculation. The first complaint which Kaplan refers to was made on August 19, 1996, before she even made her EEOC charge. The other complaint was made on November 10, 1996, by Kaplan's commanding officer based on Kaplan's failure to obey a direct order and police protocol. This complaint was investigated by an Officer Garcia in the internal affairs unit, who investigated and sustained the allegations and made a disciplinary recommendation to the police review board. The review board then made the actual decision to suspend Kaplan for 30 days, which was affirmed by an independent arbitrator. Other than the fact that the second investigation occurred two months after her first complaint, Kaplan has put forth absolutely no evidence linking her complaints to any adverse employment actions. Therefore, the Court finds that Kaplan has failed to show a causal connection and GRANTS summary judgment on her retaliation claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant City of Chicago's Motion to Strike [98-1] and GRANTS the Motion for Summary Judgment [97-1] on all claims but the failure to accommodate claim. It is so ordered.

ENTER:

*Blanche M. Manning*

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATED: *11-2-04*