IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

MAR 0 4 2005   NF,

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| SHELLY KAPLAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 99 C 1758 |
| | ) | |
| v. | ) | Judge Manning |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S *MOTION IN LIMINE* TO BAR PLAINTIFF
FROM SEEKING EMOTIONAL DISTRESS, A CLAIM SHE WAIVED OR ADDUCING
ANY EVIDENCE OF EMOTIONAL DISTRESS**

Defendant City of Chicago (the "City"), by its attorney, Mara S. Georges, Corporation

Counsel of the City, moves this Court *in limine* to bar plaintiff Shelly Kaplan from claiming

emotional distress or adducing any related evidence. In support of its motion, the City states as

follows:

1.     Plaintiff is barred from seeking emotional distress damages for several reasons.

2.     First, she admitted that "she is not claiming emotional distress." Plaintiff's

Revised Answers to Defendant's First Set of Interrogatories, No. 4 (August 2, 2000), attached as

Ex. A; Plaintiff's Answers to Defendant's First Request for Admissions, ¶1 (December 6, 2000),

Ex. B); Help at Home, Inc. v. Med. Capital L.L.C., 260 F.3d 748, 753 (7th Cir. 2001). To the

extent that plaintiff argues a subsequent filing negates her admission, the law rejects such an

argument. See id.

3.     She never claimed emotional distress damages with respect to her failure to

accommodate claim in her discovery responses although she specifically agreed to in a joint

submission ordered by Magistrate Judge Denlow. Ex. C; Ex. D (Plaintiff's Second Set of

Supplemental Answers to Defendant's Second Set of Interrogatories, Answer to Interrogatory 9

and Plaintiff's Estimation of Damages, Dated July 25, 2003).

    4.     She also represented to Magistrate Judge Denlow that she was not seeking

emotional distress for her failure to accommodate.

> The Court: . . . Does plaintiff intend to call medical witnesses in support of the emotional
> distress claims?
> Ms. Donnelly: Your Honor, we will be calling a medical treater as a witness to
> substantiate the reports that she was suffering from the sick building. . .
> * * *
> The Court: I thought this was a religious discrimination case?
> MS. DONNELLY: It is also, Judge.
> THE COURT: Did I miss that?
> MS. DONNELLY: It is. But the emotional distress is related to the fact that the plaintiff
> was suspended for – without any due cause, was brought back without being told why she
> was being brought back. She was made to work while she was injured.

See Ex. F (Report of Proceedings before Judge Denlow on July 30, 2003, pp.3-5).

    4.     As a result of plaintiff's representations during discovery, defendant was not able

to fully conduct discovery on this claim so it would be unfair for plaintiff to claim emotional

distress now.

    5.     Finally, and importantly, plaintiff excluded emotional distress damages from her

claimed damages in the pre-trial order. See Plaintiff's Statement of Damages (Attachment (g) to

the Final Pretrial Order) Thus, she has waived any claim.

    6.     Plaintiff should be barred from claiming emotional distress or testifying or

offering any evidence or making any arguments regarding emotional distress under Federal Rule

of Evidence 403. Such evidence would confuse the jury, elongate the trial and cause the

defendant undue prejudice.

## CONCLUSION

For these reasons, the City respectfully request that plaintiff be barred from claiming

emotional distress and offering evidence or making arguments relating to emotional distress.

Respectfully submitted,
MARA S. GEORGES
Corporation Counsel of the City of Chicago

By:    *Valerie Depies Harper*

VALERIE DEPIES HARPER
Senior Counsel
CURTRICE SCOTT WRIGHT
Assistant Corporation Counsel

30 N. LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-4746

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELLY Y. KAPLAN, | ) |
| | ) |
| Plaintiff | ) No. 99 C 1758 |
| | ) |
| v. | ) Judge Manning |
| | ) |
| CITY OF CHICAGO | ) Magistrate Judge Denlow |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S REVISED ANWERS TO DEFENDANT'S
### FIRST SET OF INTERROGATORIES

1.  Identify each person who assisted you in
answering these interrogatories, specifying the number
and/or subpart of each interrogatory for which each iden-
tified person provided assistance.

    None, other than counsel.

2.  Identify each and every individual whom you ex-
pect to call as an expert witness at trial or to rely upon
as an expert in any motion, and for each such individual,
state:

    Experts, if any, have not as yet been identified.

3.  Identify each and every individual you believe
has knowledge of the facts underlying your claims, including
all individuals with knowledge relating to the allegations
in your Complaint or First Amended Complaint in this case,
or relating to your underlying EEOC Charge, and for such in-
dividual state:

    a.  His first and last name, address and telephone
        number;



    b.   His race;

    c.   Whether he was or is an employee of Defendant City and, if so, his most recent position; and

    d.   The subject matter, the specific facts of which he has knowledge and how he obtained that knowledge.

Sergeant Braitek wrongfully filed CR's against me.

P.O. Ella Todd and Watch Commander Lieutenant Johnson, #699, have knowledge that Watch Commander Mark Davis ordered that I not be permitted to get two consecutive days off.

Investigation continues.

4.  Set forth in detail your calculations as to "lost earnings," "emotional distress," and any consequential, compensatory and other damages, or relief you believe is owed to you and for which you seek redress by this lawsuit and for each element of compensation for "lost earnings," "emotional distress," consequential, compensatory and other damages, and other relief sought

I do not seek emotional distress damages. I seek damages for the following:

a)  Denial of IOD leave and being required to use my medical leave while I was ill;

b)  Loss of earnings, seniority, and benefits, while on suspension from March 3, 1997 to October 20, 1998 and May 1, 2000 to May 30, 2000.

c)  Denial of tuition reimbursement

-2-

       d)   Equitable relief to correct inaccurate performance ratings.

       e)   Equitable relief to expunge all retaliatory CR's and suspensions.

       f)   Equitable relief to restore my seniority date.

       g)   Equitable relief to eliminate all continuing discriminatory acts and policies, including but not limited to consecutive off days.

       5.   List all physical, mental and emotional health care workers, including, but not limited to, physicians, psychiatrists, psychologists, social workers, and counselors, who provided any medical care, examined and/or treated you since January 1, 1990, and for each person state the following:

       a.   The full name and business address of such person;

       b.   The date(s) when you visited each health care worker and if you have another scheduled appointment;

       c.   The amount charged by the person;

       d.   The amount covered by insurance or health plans;

       e.   The amount Plaintiff paid to each person; and

       f.   The identity of all documents reflecting the information requested in this Interrogatory.

-3-

Plaintiff objects to any inquiry about matters that occurred before January 30, 1991, when she began employment with the Chicago Police Department. As to matters that occurred on and after January 30, 1991, this information has been provided to the Chicago Police Department; accordingly, plaintiff objects to this interrogatory as unduly burdensome, duplicative, and not reasonably calculated to produce relevant information not already known to defendant.

6. State whether you were hospitalized; admitted to any medical or psychiatric institution, rehabilitation clinic, substance abuse program, treatment center or rehabilitation clinic; restricted from working; attended school; or were otherwise unable to work during all or any part of the period since January 1, 1990.

Plaintiff objects to any inquiry about matters that occurred before January 30, 1991, when she began employment with the Chicago Police Department. As to matters that occurred on and after January 30, 1991, this information has been provided to the Chicago Police Department; accordingly, plaintiff objects to this interrogatory as unduly burdensome, duplicative, and not reasonably calculated to produce relevant information not already known to defendant.

7. State whether you applied for employment of any kind or character since February 1, 1992.

Objection: This information is not relevant to this lawsuit nor reasonably calculated to lead to the discovery of relevant information.

-4-

8.   Have you engaged in efforts to secure employ-
ment since August 1, 1996 not listed in response to the
above Interrogatory?

Objection:  This information is not relevant to
this lawsuit nor reasonably calculated to lead to the dis-
covery of relevant information.

9.   Describe in detail any and all employment,
full-time or part-time, permanent or temporary, or self-
employment, which you have held since August 1, 1996 aside
from your employment with the City of Chicago, including:

Objection:  This information is not relevant to
this lawsuit nor reasonably calculated to lead to the dis-
covery of relevant information.

10.   State whether you received any monies of any
kind or character as compensation for services or otherwise
from sources other than those stated  in your answers to the
preceding interrogatories since August 1, 1996.

Objection:  This information is not relevant to
this lawsuit nor reasonably calculated to lead to the dis-
covery of relevant information.

11.   State whether you or your agents or anyone ac-
ting on your behalf has taken, given or obtained any
statements, signed or unsigned, oral or written, or has in
their possession any such statements, or knows of the exist-
ence of any such statements, from or by any person who has
or claims to have, knowledge of the facts relating to your
claims.

-5-

None, other than statements submitted to the Chicago Police Department in CR investigations and in the course of the EEOC investigation.

12. Were any photographs, films, videotapes, slides or recordings made relating to the matters alleged in Plaintiff's Complaint or Plaintiff's Amended Complaint(s) and/or Plaintiff's damages claims. If so, state the date(s) on which such photographs, films, video tapes or recordings were made, the subjects and who has custody of them.

None by plaintiff ∷ by anyone acting on her behalf.

The undersigned, under penalties of perjury, certifies that the above interrogatory answers are, to the best of her knowledge, information, and belief, true.

Dated: August 2, 2000

Shelley Y. Kaplan

Shelley Y. Kaplan

-6-

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHELLY Y. KAPLAN,　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff　　　　　　　)　　No. 99 C 1758
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　)　　Judge Manning
　　　　　　　　　　　　　　　　)
CITY OF CHICAGO　　　　　　　　)　　Magistrate Judge Denlow
　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　)

**PLAINTIFF'S ANSWERS TO
DEFENDANT'S FIRST REQUEST FOR ADMISSIONS**

　　　　1.　　Plaintiff is not claiming emotional distress.

　　　　2.　　Plaintiff is not claiming disability dis-
crimination in case No. 99 C 1758.


Kenneth N. Flaxman
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603

(312) 427-3200

Attorney for Plaintiff

**EXHIBIT
B**

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served on Valerie Harper, Ass't Corp Counsel, 30 N LaSalle Street, Suite 1020, Chicago, Illinois 60602, 744-7472, by telefax to 744-3989, and confirmatory copy by first class mail, postage prepaid, this 6th day of December, 2000.

KENNETH N. FLAXMAN
122 South Michigan Avenue
Suite 1850
Chicago, Illinois 60603

(312) 427-3200

*attorney for plaintiff*

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHELLY Y. KAPLAN,            )
                            )
            Plaintiff,       )      No. 99 C 1758
                            )
      v.                     )      Judge Manning
                            )
CITY OF CHICAGO,            )      Magistrate Judge Denlow
                            )
            Defendant.       )
                            )

### JOINT SUBMISSION RE ISSUES RAISED IN DEFENDANT'S RULE 37 MOTION FOR RULE TO SHOW CAUSE AND TO BAR FOR FAILURE TO COMPLY WITH 4/15/03 ORDER AND TO SUPPLEMENT DISCOVERY

Pursuant to this Court's Order of July 23, 2003, the parties jointly submit this statement regarding the issues raised in Defendant's Rule 37 motion for a rule to show cause and to bar witnesses, claims and evidence for plaintiff's failure to comply with this Court's April 15, 2003 order and failure to supplement discovery in compliance with the Federal Rules.

### AGREEMENTS

**PLAINTIFF'S DEPOSITION**: The parties have agreed to continue plaintiff's deposition for two, non-consecutive days from 9:30 a.m. - 4:30 p.m. assuming full cooperation. The City will make its best efforts to limit the deposition to plaintiff's emotional distress claims, new issues raised in plaintiff's amended complaint regardless of date, including plaintiff's failure to accommodate claims; events occurring on or after January 9, 2001 (or the date of the plaintiff's last deposition session); and relevant events left unfinished in the previous deposition sessions.  The parties agree that plaintiff's deposition will be completed by August 19, 2003. The plaintiff will appear for her deposition on two dates so that the deposition is completed no

1



EXHIBIT

C



later than August 19, 2003. Plaintiff's counsel is available on August 4, 2003, and on August 12, 2003 for plaintiff's deposition and the City will agree to these dates upon confirmation of plaintiff's availability by plaintiff's counsel by calling or faxing defendant's counsel before close of business July 25, 2003.

**PERSONS WITH KNOWLEDGE**: Plaintiff represents that she has listed every person with knowledge of the facts and circumstances surrounding her claims. See Plf's Answ. to City's Second Set of Interr. No. 2, Exhibit E and Plf's Answ. to the City's First Set of Interr., Exhibit I and Plf's Revised Answ. to Def's First Set of Interr., Exhibit J.

**SOURCE AND SUBSTANCE OF EACH PERSON'S KNOWLEDGE**: Plaintiff agrees to provide the source and substance of each person's knowledge and "as much detail as she reasonably can" to the extent that she is reasonably aware of the source and substance of each person's knowledge and/or can reasonably determine the source and substance. See Defendant's Interrogatory No. 2, Exhibit E. See also Plf. May 29, 2003 letter, Exhibit H.

**LAY WITNESSES**: Plaintiff will identify whom she potentially may call as lay witnesses at trial by July 29, 2003. Plaintiff will not be calling as lay witnesses persons for whom she has not provided the identifying information (i.e., address, telephone number and source and substance of knowledge or relevance to plaintiff's claims), unless plaintiff could not have reasonably identified this witness at the time she fully answers Interrogatory No. 4 of the City's Second Set of Interrogatories, as agreed herein on Tuesday, July 29, 2003.

Plaintiff will attempt to further identify witnesses' telephone numbers, including the phone number for "C.[P.]D. Rumor Central Headquarters."

**IDENTIFICATION OF RESPONSIVE DOCUMENTS**: Plaintiff agrees to specifically identify all documents responsive to each of defendant's document requests and defendant's interrogatories by Bates number or by producing a copy or copies of the

2

document(s). See, e.g., Document Request Nos. 1-6, 8-9, 13, Exhibit K. See Def's May 12, 2003 letter, Exhibit F.

**IDENTIFICATION OF MEDICAL PROVIDERS:** Plaintiff has disclosed all medical providers, including current treaters. See Plf's Answ. to City's Second Set of Interr. Nos. 6 and 7, Exhibit E and Plf's May 29, 2003 letter, Exhibit H. Plaintiff will provide all doctors' addresses and telephone numbers, including Dr. Potko. See Def's May 23, 2003 letter, Exhibit L. See also Plf's May 29, 2003 letter, Exhibit H.

Plaintiff agrees to identify all her medications and/or prescriptions prescribed to her from 1991 to the present.

**EMOTIONAL DISTRESS AND CERTIFICATION:** Plaintiff agrees to fully answer Interrogatory Nos. 9 of the City's Second Set of Interrogatories and Production Request No. 3 of the City's Second Set of Document Requests in compliance with Fed. R. Civ. Pro. Nos. 33 and 34.

**CERTIFICATION:** Plaintiff agrees to certify her interrogatory answers so that all supplemental answers provided to the City, past and future, are certified.

**TAX RETURNS:** Plaintiff agrees to produce her federal and state tax returns and attachments since 1997 and sign a release(s) for any that she does not have in her possession or control so that the City may obtain them from the appropriate agencies. See Plf's Resp. to Doc. Request No. 5, Ex. K.

## IMPASSE

**MEDICAL RELEASES:** Executed and notarized medical releases for all of plaintiff's health care providers as requested in the City's Second Doc. Request, No. 6, Exhibit K and Plf's May 29, 2003 letter, Exhibit H. It is defendant's position that plaintiff previously agreed to produce this. In the alternative, the City requests that this Court issue an order so that the City

3

may obtain these records.

Defendant City of Chicago does not waive its requests for remedial relief as set forth in its Rule 37 Motion, including but not limited to dismissal of plaintiff's emotional distress claims.

**DATED: JULY 23, 2003**

Respectfully Submitted,

SHELLEY Y KAPLAN

BY: _____
AURORA R. DONNELLY
Law Offices of Gustavo H. Santana, Ltd.
236 East North Avenue
Northlake, Illinois 60164

(708) 836-1111

Respectfully Submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

BY: _____
DIANE S. COHEN
VALERIE DEPIES HARPER
Assistants Corporation Counsel
30 N. LaSalle, Room 1020
Chicago, Illinois 60602
(312) 744-4746

4

# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SHELLEY Y. KAPLAN,      )
                          )
       Plaintiff,        )
                          )
       v.           )     NO.  99 CV 1758
                          )
CITY OF CHICAGO,       )
                          )     JUDGE MANNING
       Defendant      )     MAGISTRATE JUDGE DENLOW

### PLAINTIFF'S SECOND SET OF SUPPLEMENTAL ANSWERS TO
### DEFENDANT'S SECOND SET OF INTERROGATORIES

### GENERAL OBJECTIONS TO INTERROGATORIES

A. Plaintiff objects to Defendant's Interrogatories because they are in part overbroad, overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and not reasonably restricted to the subject matter of this Complaint.

B. Plaintiff objects to Defendant's Interrogatories because they call for information that was either generated by Defendant and as such, information that is already known to Defendant or information that Defendant has knowledge of because it was supplied to Defendant by Plaintiff in the course of Plaintiff's employment by Defendant.

### INTERROGATORIES

1. State the full name, including any aliases, present residence address and social security number of the person signing the answers to these interrogatories.

**EXHIBIT**

exhibit

D

**ANSWER:** Shelley Yvonne Kaplan, 3124 South Lowe Avenue, #2, Chicago, IL 60616, 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.

2. Identify all persons having knowledge of the facts and circumstances surrounding the plaintiff's claims against defendant in this action, specifying the source and substance of each person's knowledge.

**ANSWER:** The general objections set forth above as A and B are incorporated herein in response to Interrogatory 2. Defendant has full information regarding those persons that have knowledge of the facts and circumstances of the plaintiff's claim that work for the Chicago Police Department; additionally, Plaintiff's attorneys, past and present have knowledge of the case, as well as Plaintiff's medical treaters, and Defendant has those names and the source of their knowledge of the case as well; Plaintiff's husband, Robert Hutchinson, 3124 South Lowe Avenue, #2, Chicago, IL 60616, has knowledge of the case from speaking with Plaintiff. Without waiving those objections, see below:

**Persons having knowledge of the facts and circumstances of Plaintiff's claim:**

Sgt. Lytton – 006th District
C.R.D. Rumor Central Headquarters -- 3510 South Michigan, 312-747-5480
Sgt. Lopez -- Academy Retreads, late 1998, 1999
Commander Christian -- Academy Head in 1991
Commander Jerry C. Robinson -- Head of O.E.C., then I.A.D. between 1995 and 1999
Sgt. Drink – in charge of recruits at the Police Academy in 1991
Recruit Class 91-01, 91-02, 91-03 (P.O. Kaplan's class), list of names attached
Lt. John Thulis – Traffic detail 1992, retired
3rd District – Acting FTO Strong; FTO Kathy Ambrose; FTO Edgar Anderson;
Officers in 3rd District in Fall, 1991
Superintendent Terry Hillard
Lt. Kushner – 3rd District
Capt. Burns – 6th District, retired
Capt. Duffy – 3rd District, retired
Shomrim Society

Chaplain Moshe Wolf
9th District Commander
FTO Al Krieger – 009th District – 1st watch
P.O. Sal Medici-006th District- retired to Florida on IOD
P.O. Joanne Prater
P.O. Arlene Gold
6th District Review Officer Willie Smith
Public Housing P.O. Volanda Merrill, P.O. Sheila Fulks 22nd District, 3rd Watch -
                                                                              partners
Barbara Hemmerling – Director of Medical Services Section and assigned nurses
Chicago Police Department Medical section doctors between 1991 and 2003
Commander Batts – 006th District
Commander Davis- 006th District
Commander Everett Johnson – 006th District
Lt. Johnson – midnights, 006th District, 1999, 2000
Capt. Gerrity – current District Commander of the 22nd District
Story about promotional exams appeared in The Defender, Chicago Tribune
Chicago City Council – Alderman Beavers
Capt. Cynthia White – 005th District
Capt. Vaclovich – 006th District – current – 2nd Watch
Capt. Lemmer and his father
Sgt. William Bratek, 3833 W. Pioneer, Chicago, IL 60634
ARP Personnel
Academy personnel employed there during Plaintiff's Academy training, 1991
006th District personnel, 003rd District personnel, 8th District personnel
9th District personnel
Detail Unit personnel
Sgt. Gawne – Personnel, 3510 S. Michigan, Chicago, IL
F.O.P. Union officials, C.P.D. Directors of Personnel, Office of Legal Affairs
Karen Rowan – Chief Counsel for Superintendent of Police
City of Chicago – Director of Personnel and staff members

3.      Identify each person you expect to call as an expert witness at trial, the

subject matter on which the person is expected to testify, the substance of the

facts and opinions to which the expert is expected to testify, and a summary of the

grounds for each opinion. Identify all related documents, including but not limited

to, the date and location of all documents used in the preparation of each expert's

opinions or report, including all notes and drafts.

**ANSWER:** Expert witnesses have not as yet been personally identified. Plaintiff will call expert witnesses regarding the medical condition of the Plaintiff as a result of the various injuries she suffered as a Probationary Police Officer and as a Police Officer, as a result of numerous denials of injury on duty status and as a result of being forced to work in a building that had been determined to be unsafe by the Illinois Department of Labor on 3/29/96. Specific expert witnesses have not yet been identified but will include one or more of Plaintiff's medical treaters and an expert witness regarding the environmental dangers of the buildings located at 2111 W. Lexington, and 1121 S. State, both in Chicago, Illinois. Plaintiff will supplement this interrogatory as soon as the specific expert witnesses are identified. See BCF AIR QUALITY TESTING REPORTS, dated December 9, 1996, and warning from the Illinois Labor Commission, Plaintiff's Bates numbered document 0182.

4.  Designate all witnesses by full name, current address and telephone number, whom plaintiff may call at the trial of this case.

**ANSWER:** A not all inclusive list of witnesses Plaintiff may call at the trial of this case includes Sgt. Bratek, Sgt. Gawne, Police Agent Garcia from Internal Affairs Department, Sgt. Lynch from the Alternate Response Unit, District Commander Everett Johnson, Captain Gerrity, FTO Al Krieger, Sgt. Williams, Lt. John Thulis, Sgt. Denowitz, P.O. Kathy Ambrose, FTO Edward Anderson, Watch Commander Lt. A. Raymond and Lt. Kushner, 003rd District. Not all possible witnesses have been identified at this time. Plaintiff may not call all the witnesses identified on the list. Plaintiff does not at this time have complete addresses or

telephone numbers of the possible witnesses, but the witness list includes Chicago
Police Department personnel whose addresses and telephone numbers are
accessible to Defendant.

5.  State whether plaintiff has ever been involved in any other civil or
    administrative action, either as a plaintiff, complainant, defendant or
    respondent. If so, state the date and place each such action was filed, including
    the name of the court or administrative body, the parties involved, the file
    number, date of filing, parties involved in the action, the nature of each such
    action, whether you gave sworn testimony, the disposition of such action,
    whether or not there was an appeal, and, if so, the result thereof, including the
    name and citation of each case reported and the amount of any settlement of
    judgment contained in each case. Identify all related documents.

ANSWER:     1) Plaintiff was plaintiff in a small claims court action in Cook
County against H & R Block where she prevailed in an action for refunding of
fees for a telephone answering service and the referral to an alternate number for
the remainder of the contract; 2) Plaintiff was successful plaintiff in an action
against Spertus Museum for the writing of a grant and was awarded $1,000
settlement.

6.  With respect to each physician, psychologist or other health practitioner, and
    each hospital, clinic or other health facility from which you have received any
    examination, treatment, service, advice and/or product (including outpatient
    services, x-rays, tests, physical therapy and any medication) from 1990 to
    present, identify the name, address, and specialty of each individual

organization, each and every date of service by each, and a description of each

treatment, service, advice and/or product and documents related thereto.

**ANSWER:**    General Objections set forth above are herein incorporated in

response to Interrogatory 6. Plaintiff began her employment with the Defendant in

1991, so records prior to that date are not relevant to this proceeding.  Defendant

has all records referred to in this interrogatory because Plaintiff submitted all

relevant records to the Chicago Police Department at the time of the occurrences.

Without waiving these objections, see Plaintiff's production of Bates numbered

documents 0290 to 0395.

7.   Are you currently under the care of any physician(s) or medical treater(s) If

so, state the name, address and specialty of each. Identify all documents

related thereto.

**ANSWER:**    General Objections set forth above are herein incorporated in

response to Interrogatory 7. Defendant has all records referred to in this

interrogatory because Plaintiff has submitted all such relevant records to the

Chicago Police Department. Without waiving these objections, see Plaintiff's

Bates numbered documents 0290 to 0395, 0435 to 0606.

8.   Identify all income you have received from 1997 through present, including

but not limited to wages and salary earned from any source.

**ANSWER:**    General Objections set forth above are herein incorporated in

response to Interrogatory 8. Without waiving these objections Plaintiff will

provide redacted tax returns for all income information that is relevant to this

proceeding. As Plaintiff's employer, Defendant has all payroll and hours/salary

records relating to Plaintiff's employment by Defendant. Other wages and salaries, if any, are not relevant.

9. Describe in detail each and every item of damage, including emotional distress and the amount thereof, which you allege you suffered as a result of any action allegedly taken against you by defendant and that you claim in the current action. State separately the amount of damages claimed with respect to each specified type of damage and describe separately the method of computation for each type of damage. Identify and all documents relied upon in provide the answer to this interrogatory.

**ANSWER**: In a letter to Equal Employment Opportunity Commission investigator Charlie Bold dated 6 August 1998, a copy of which is attached and hereby incorporated and that Defendant has possession of, Plaintiff provides an approximation of damages claimed. See also Plaintiff's Estimation of Damages dated June 25, 2003, attached and herein incorporated and Plaintiff's Bates numbered documents 0290 to 0411.

10. Have you ever been an outpatient or confined to a hospital or clinic, and/or treated by a physician, technician and/or counselor for drug or alcohol abuse, treatment or counseling. If so, give the name and address of each such hospital, physician, technician or clinic, the approximate dates of such confinement or service and state in general terms the reason for such confinement or service.

**ANSWER**: No.

10. Were any diaries, written notes, photographs, films, video tapes, slides or recordings kept or created regarding the matters alleged in plaintiff's complaint and plaintiff's claim for damages. If so, state the date or dates on which such diaries, written notes, photographs, films, video tapes, slides or recordings were created, the subjects of these items, and who currently has custody of them.

**ANSWER:** General Objections set forth above are herein incorporated in response to Interrogatory 10. Defendant has tapes and written notes regarding these matters. The Chicago Police Department taped all phone conversations at the Alternate Response Unit and maintains logs and written notes on all job actions. Plaintiff does not have these items in her possession. Without waiving these objections, see Plaintiff's Bates numbered documents 0002 to 0661.

11. Has plaintiff been employed (including self-employment), or sought employment from 1997 to the present. If so, state the names, addresses and phone telephone numbers of the employer(s), and prospective employer(s), the date of hire or application, the position(s) held or applied for, the number of hours worked each week, the amount and method of compensation received, and if applicable, the date employment was terminated and the reason therefor. Identify any documents related to this request.

**ANSWER:** Plaintiff has worked for the Chicago Police Department since 1991 and those records are in Defendant's possession. Plaintiff was terminated by the Chicago Police Department in 1996, and subsequently reinstated in 1997, with payment issues unresolved.

12. Identify each and every instance, during your employment with the Chicago Police Department, where you were allegedly subjected to disparaging remarks by supervisory personnel, which you believe were motivated by anti-Semitism. Identify the time, date and place of each instance and by whom the remarks were allegedly made.

**ANSWER:** General Objections set forth above are herein incorporated in response to Interrogatory 12. Plaintiff objects to this Interrogatory because documents referring to these instances are already in the possession of the Chicago Police Department and therefore, in Defendant's possession. These incidents, continuous since the date of hire of Plaintiff, have been reported to and discussed with management or leadership employees of the Chicago Police Department on numerous occasions and have been painstakingly documented on every occasion by Plaintiff and sometimes by Defendant. Documents describing these instances in detail are already in Defendant's possession. Without waiving these objections, see Plaintiff's Bates numbered documents 0161 to 0181, 0003, 0006.

13. Identify each and every time during your employment with the Chicago Police Department that you allege you were denied reasonable accommodation based on your religion.

**ANSWER:** General Objections set forth above are herein incorporated in response to Interrogatory 13. Without waiving those objections, Plaintiff requested accommodation for the 1998 Police Sergeant examination # 39703 and was offered inappropriate accommodation. In August 1996, Plaintiff's request for

accommodation to go to law school was denied. Plaintiff was denied accommodation for the Sergeant's promotional exam on October 28, 1997; for the December, 1993, sergeant's exam; for the Detective's exam offered August 31, 1994; for the April, 1994 Detective examination and for the October 9,1999, Detective exam.

14. Identify each and every time during your employment with the Chicago Police Department that you allege you were retaliated against because you filed ADA claims and/or charges with the EEOC. Include the date(s) of the alleged incidents and the person(s) you allege retaliated against you.

**ANSWER:** General Objections set forth above are herein incorporated in response to Interrogatory 14. Plaintiff did not file ADA claims. Without waiving these objections, see Plaintiff's Bates numbered documents 0002 to 0160, 0607 to 0661.

Dated: July 29, 2003

Respectfully submitted,

Shelley Y. Kaplan

By: _____
Aurora R. Donnelly
Plaintiff's Attorney

Law Office of Gustavo H. Santana, Ltd.
236 East North Avenue
Northlake, IL 60164
708-836-1111

## PURSUANT TO RULE 33
## FEDERAL RULES OF CIVIL PROCEDURE

Under penalties as provided by law pursuant to Rule 33 of the Federal Rules of Civil Procedure, the undersigned certifies under oath that the statements set forth in the foregoing Interrogatories are true and correct.

_____
Shelley Y. Kaplan

Law Office of Gustavo H. Santana, Ltd.
236 East North Avenue
Northlake, IL 60164
708-836-1111
Atty. # 31328

## CERTIFICATE OF SERVICE

I, Aurora R. Donnelly, an attorney, certify that I have caused a true and correct copy of PLAINTIFF'S SUPPLEMENTAL ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES, to be served personally by hand delivery on July 30, 2003 to:

> Diane S. Cohen
> Valerie Despies Harper
> Assistants Corporation Counsel
> City of Chicago
> 30 North LaSalle, Suite 1020
> Chicago, Illinois 60602

_____
Aurora R. Donnelly,
Plaintiff's Attorney

## PLAINTIFF'S ESTIMATION OF DAMAGES

Plaintiff's damages include compensatory damages for:

1.  Injury on duty status for all disputed medical injuries, up to and including the settlement effected with the Chicago Police Department today, June 25, 2003, with regard to a broken wrist, which was today classified as injury on duty, with pay, but where a ten-day earned furlough was not granted.

2.  Back pay for forced disability leave from March 3, 1997 to October 20, 1998, and May 1, 2000 to May 30, 2000, with full pensionable rights and benefits, including tax status letter, duty availability, uniform allowances, medicare and insurance benefits, including private disability insurance covering existing conditions per initial enrollment qualifications at the time of forced leave.

3.  Back pay based on adjustment in job rank for discrimination in promotional testing and placement. All money payments to be made at the salary level of the final rank determination.

4.  Compensatory pay of overtime for income lost through enforced medical roll status and through enforced relegation to the Alternate Response Unit, where overtime was routinely not available.

5.  Payments for disqualification for special employment through false manipulation of performance ratings, with interest.

6.  One hundred percent reimbursement for all law school costs, lost salary stream for delay and interruption of matriculation, with interest.

7.  One hundred percent compensation for all out-of pocket medical expenses from job-related injuries, past, present, and future and full insurance coverage, including, but not limited to reimbursement for health insurance at $338.57 a month, for a total of $6,094.26, various other medical expenses, including but not limited to $1,130.60 and $932.60.

8.  The $25.00 registration fee paid for 6 promotional exams where accommodation was not provided, nor was registration fee returned. Plaintiff requested accommodation for the 1998 Police Sergeant examination # 39703 and was offered inappropriate accommodation. Denied accommodation for the Sergeant's promotional exam on October 28, 1997. Denied accommodation for the December, 1993, sergeant's exam. Denied accommodation for the Detective's exam offered August 31, 1994. Denied accommodation for the April, 1994 Detective examination. Denied accommodation for the October 9,1999, Detective exam.

9.  Equitable relief to correct inaccurate performance ratings, to expunge retaliatory CRs and suspensions, to restore seniority date.

0406

Plaintiff's emotional distress damages in the amount of $500,000 for emotional distress suffered as a result of numerous incidents and a pattern of religious discrimination suffered over the 12 years Plaintiff was a member of the Chicago Police Department, including but not limited to these incidents:

1.      Pursuant to the Chicago Police Department's Behavioral Alert System, Counseling Record, Sgt. Gertrude West, #951, employee # 707245, unit # 123 placed P.O. Kaplan on Behavioral Alert System for excessive medical usage and referred her to Professional Counseling Service. On March 6, 1997, Plaintiff was ordered to undergo and subjected to a mandatory physical exam that resulted in a determination of "essentially normal physical exam". Nevertheless, Plaintiff was dismissed by the Chicago Police Department on March 7, 1997 as "disabled", without pay and not reinstated until October 20, 1998, when she was reinstated without explanation, apology or awarded benefits, pay, seniority, etc. she lost as a result of the unwarranted suspension;

2.      Plaintiff was subjected to denials of injury on duty status in 1992, when she suffered injury during training exercises at the Police Academy and was forced to return to duty while injured, and in fact has since that time suffered from a herniated disc, which injury the Chicago Police Department claimed and continues to claim was not job-related;

3.      In 1995 and 1996, when Plaintiff was continuously forced to work in two buildings that were declared dangerous by the Labor Department and by independent environmental studies and where Plaintiff's doctor repeatedly recommended that Plaintiff be removed from those toxic premises, which were making her physically ill, where the Chicago police Department accused and documented Plaintiff for medical roll abuse and, in writing, created records in her personnel file accusing her of fraud, thus irretrievably tainting her reputation and damaging her career;

4.      In 1997 and 1998 Plaintiff was again denied injury on duty status, required to work while injured and subjected to an egregious Internal Affairs Department investigation that was unfounded and improperly conducted.

5.      When Plaintiff applied to and was accepted to law school, she was subsequently denied tuition reimbursements she was entitled to that were later granted, after she suffered humiliation and distress as a result of the treatment she was subjected to.

6.      Throughout her career at the Chicago Police Department, Plaintiff has Been subjected to religious discrimination, beginning with damaging ethnic/religious remarks made by FTO Ambrose in1992, and Lt. Kushner comparing P.O. Kaplan to a herpes virus at roll call in 1996, and continuing to this day, where administrative and leadership figures in the Chicago Police Department have made derogatory and painful comments about Plaintiff, harass her and

cause her to be denied advancement and to suffer severe emotional distress.

**Dated: June 25, 2003**

# Exhibit E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS


SHELLEY Y. KAPLAN,         )   Case No. 02-CV-8056
                          )
        Plaintiff,    )
                          )
  versus              )   Everett McKinley Dirksen Bldg.
                          )   219 South Dearborn Street
CITY OF CHICAGO,       )   Chicago, Illinois 60604
                          )
        Defendant.    )   July 30, 2003
                          )   9:20 A.M.


TRANSCRIPT OF HEARING
BEFORE HONORABLE MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:     Law Offices of Gustavo H. Santana, Ltd
                     By:  AURORA RAMOS DONNELLY, ESQ.
                     236 East North Avenue
                     Northlake, Illinois 60164

For the Defendant:     City of Chicago, Law Department
                     By:  DIANE COHEN, ESQ.
                         VALERIE HARPER, ESQ.
                     30 North LaSalle Street
                     Chicago, IL 60602-1202


Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

---

## TRANSCRIPTS PLUS
### 435 Riverview Circle, New Hope, Pennsylvania 18938
email CourtTranscripts@aol.com

### 215-862-1115 (FAX) 215-862-6639



1          CLERK:  02-8056, Kaplan versus City of Chicago.

2          MS. HARPER:  Valerie Harper and Diane Cohen on behalf

3  of defendant, City of Chicago.

4          THE COURT:  Go ahead and spell your last names for

5  the record, please.

6          MS. HARPER:  Oh, sorry. D-E-P-I-E-S H-A-R-P-E-R.

7          MS. COHEN:  Diane Cohen, D-I-A-N-E C-O-H-E-N.

8          MS. DONNELLY:  Aurora Ramos Donnelly, A-U-R-O-R-A R-

9  A-M-O-S D-O-N-N-E-L-L-Y for plaintiff, Shelly Kaplan.

10          THE COURT:  I'm pleased to see that you substantially

11  worked everything out.

12          MS. HARPER:  Yes, thank you for your input and

13  instruction in that matter.  There's just a few things

14  plaintiff's counsel apparently needs some more time to get us

15  the things she agreed to, but she has agreed to do it by August

16  the 5th.  We just wanted to make that clear on the record, and

17  that includes things such as tax returns and whatnot.  So, we

18  wanted to get that on the record.

19          THE COURT:  Is that correct, Ms. Donnelly?

20          MS. DONNELLY:  Yes, it is, Your Honor.  My client has

21  to actually find her tax returns from 1997, and I wasn't even

22  able to confer with her until yesterday at 4:30.  So, we would

23  appreciate the extra days.

24          THE COURT:  Very good.

25          MS. HARPER:  And that includes for the other matters

3

1 listed in here.

2            MS. DONNELLY:  Yes, um-hum.

3            THE COURT:  Okay.  And then there was one area of

4 impasse I noted, and do you want me to deal with that right

5 now?

6            MS. HARPER:  If you wouldn't mind, Your Honor.

7            MS. DONNELLY:  Yes.

8            THE COURT:  Okay.

9            MS. HARPER:  The City thought we had an agreement as

10 to medical releases for plaintiff's medical providers.  She has

11 not only claimed extreme emotional distress, but also has a

12 sick building claim, that a building she was assigned in made

13 her nauseous.

14            So, it's the City's position that we need all medical

15 providers revealed.  And we also need those medical records.

16            Unfortunately, this has been drawn out several months

17 now.  So, either we need a release from her or an order from

18 this Court that we may subpoena the records of all her medical

19 providers.

20            THE COURT:  Okay.  Let me ask this question.  Does

21 plaintiff intend to call medical witnesses in support of the

22 emotional distress claims?

23            MS. DONNELLY:  Your Honor, we will be calling a

24 medical treater as a witness to substantiate the reports that

25 she was suffering from the sick building.  This -- these

4

1 records have been provided to the City from the time that the
2 incidents occurred because they were subject to what the Police
3 Department terms complaint report, which is what the plaintiff
4 was --

5         THE COURT: How does a sick building become a Federal
6 claim?

7         MS. DONNELLY: It does, Your Honor, because plaintiff
8 -- it's somewhat long. Plaintiff was transferred into two sick
9 buildings. She subsequently had to be taken to the doctor on
10 several times on an emergency basis for respiratory complaints.

11         Her treater, Dr. Reed, who has been disclosed and
12 there are many records in the discovery regarding his
13 information, recommended to the Police Department very strongly
14 that the plaintiff be removed from this building because she
15 was getting extremely ill.

16         Instead of that, they did not remove her. They kept
17 her there without allowing her to transfer. And then the
18 reason for this lawsuit is that she was released from the
19 Police Department for medical roll abuse.

20         THE COURT: For what?

21         MS. DONNELLY: Medical roll abuse. Meaning that
22 she had overused her sick time. So, there's a circular issue
23 here --

24         THE COURT: I thought this case was a religious
25 discrimination case?

5

1          MS. DONNELLY:  It is also, Judge.

2          THE COURT:  Did I miss that?

3          MS. DONNELLY:  It is.  But the emotional distress is

4   related to the fact that the plaintiff was suspended for --

5   without any due cause, was brought back without being told why

6   she was being brought back.  She was made to work while she was

7   injured.

8          THE COURT:  So, you do -- see, normally if all of

9   you're claiming is emotional distress without bringing in

10  medical witnesses, then I don't permit the discovery --

11         MS. DONNELLY:  Um-hum.

12         THE COURT:  -- of the treater because it's just --

13  and as long as you don't bring out, you know, that she went to

14  see doctors, that she's just aggravated by the whole thing.

15  But if you're going to bring in medical testimony, then they're

16  entitled to see -- you know, obtain the medical discovery.  So,

17  I'm just trying to understand, you know, which way you're going

18  with this case.

19         MS. DONNELLY:  The medical treaters were not

20  psychiatrists who were treating her for psychological

21  emotional distress.  And there's a subtle difference here,

22  Judge, she's --

23         THE COURT:  So, what's the distress that you're

24  claiming as a result of the building?

25         MS. DONNELLY:  The distress is that she was made to

6

1 continue to work in a building that was making her ill. And
2 then was castigated and reprimanded and punished for it.

3    THE COURT: So, are the doctors -- is the doctor --
4 is the only doctor you're going to call the doctor that's going
5 to discuss whether or not she was being made ill because of the
6 building?

7    MS. DONNELLY: Yes, Judge.

8    THE COURT: Okay. And what type of doctor is that?

9    MS. DONNELLY: Dr. William Reed. I'm not sure if
10 I'll be able to have him testify, but it would be a general
11 practitioner or a respiratory pulmonary specialist.

12    THE COURT: Okay. Now, are you going to be claiming
13 any kind of medical claims for psychiatric -- are you seeking
14 any dollar bills for medical bills? Recovery of any medical
15 bills other than perhaps Dr. Reed?

16    MS. DONNELLY: The medical bills, no. We will not be
17 seeking damages for psychiatric care.

18    THE COURT: Okay. Okay. She's made clear they're
19 not -- she's not going to be seeking damages for psychiatric
20 care. So, tell me what medical testimony you need now as it
21 relates to discovery, Ms. Harper?

22    MS. HARPER: Well, there's a few issues that --
23 plaintiff has a lot of health issues going on that could
24 account for the emotional distress that she is supposedly
25 claiming. And it's been really unclear in her deposition. For

1  instance, she claims cancer and then she was offered a
2  procedure, but she couldn't tell me --
3          THE COURT: She claims what?
4          MS. HARPER: That she has cancer. But she couldn't
5  -- and that she was recommended a procedure. Yet she couldn't
6  identify for me what that procedure was.
7          THE COURT: Well, is she claiming -- she's not
8  contending that the cancer was caused by the building, or is
9  she?
10         MS. HARPER: No, Your Honor.
11         MS. DONNELLY: No, Your Honor.
12         MS. HARPER: My issue is she has a lot of medical
13 issues that could account for the emotional distress that she
14 was -- or claim she was being -- undergoing treatment and then
15 the plaintiff herself can't fully answer questions about her
16 health, like what kind of procedure the doctors recommended.
17         THE COURT: Well, but as I understand from plaintiff,
18 the issue that the plaintiff is looking to medical testimony
19 for is whether or not the building was causing a situation that
20 required her to leave those buildings. That's my understanding
21 of what the doctor is being called for.
22         MS. HARPER: Right. I guess there's --
23         MS. COHEN: If I may, Your Honor. Diane Cohen.
24 Plaintiff has not limited her claim to -- as far as emotional
25 distress is concerned. She has simply claimed emotional

1　distress damages in connection with the alleged conduct of the
2　City of Chicago.

3　　　　So, in an emotional distress in discovery, the City
4　is entitled to find out all of the other stressors in her life
5　and other factors that may have contributed to emotional
6　distress.　And --

7　　　　THE COURT:　But -- no.　The answer is no.　You're
8　not.　You're not entitled to go into everybody's medical
9　history, invade their privacy in terms of their psychiatric and
10　other records if they're not claiming those kind of damages
11　were caused by the City.

12　　　　If they claim that those kind of damages were caused
13　and those kind of medical situations were caused and they bring
14　it out, absolutely, you're entitled to it.　That's what I'm
15　trying to clarify.

16　　　　Because anybody can come into this Court and claim
17　emotional distress without opening up their lives to you going
18　into their medical background unless they seek to raise it from
19　a medical standpoint.

20　　　　MS. COHEN:　Well, if I may, just one example.　When I
21　was deposing the plaintiff's husband, he testified that the
22　plaintiff was taking medication which had not -- the plaintiff
23　has not disclosed, to my knowledge, as of today what medication
24　that was.　And that there may have been some side effects from
25　that medication.　So, for example, this goes to two issues:

9

1    One, we would submit that that issue goes to
2  emotional distress.  Was that making her feel -- was that
3  affecting her emotions, was that affecting her mood.

4    But, two, plaintiff is claiming that she was
5  experiencing side effects that -- due to a stick building.
6  Well, we're entitled to know was she taking any medications or
7  under any other --c

8    THE COURT:  Well, you're entitled -- you're entitled
9  to inquire as to, you know, what she was taking.  But that
10 doesn't open up all the doctors.

11   MS. COHEN:  Well, but, for example, on this very
12 example, to date, we don't know what she was taking.  We've
13 deposed plaintiff, we've sent interrogatories --

14   THE COURT:  Well --

15   MS. COHEN:  -- to plaintiff and she still hasn't
16 disclosed it.

17   THE COURT:  Well, has she denied she was taking
18 anything?  Or she said she was taking something but she hasn't
19 disclosed it?

20   MS. COHEN:  Well, we have interrogatories that the
21 plaintiff's counsel just handed us today, and it's still not
22 disclosed what that medication was and she agreed to do that
23 pursuant to our meeting.

24   THE COURT:  Okay.  Well, as it relates to medical
25 releases, based on plaintiff's representation that they're not

1  seeking emotional distress or psychological damages, unrelated
2  to the issue of the building, I'm not going to require them to
3  give you medical releases.

4          However, with respect to the medical building issue,
5  you are entitled to take the discovery from this doctor and
6  find out how it all impacted.  That's the order.

7          MS. DONNELLY:  I got --

8          THE COURT:  And I'm going to ask that the plaintiff
9  provide a release with respect -- what's the doctor's name
10 again?

11         MS. DONNELLY:  It's primarily Dr. William Reed,
12 Judge.

13         THE COURT:  Well, it's either primarily or it is.  I
14 mean if there are other doctors, they're entitled -- if you're
15 going to be relying on other doctors, they're entitled to
16 discovery.

17         So, you decide which doctors you're going to be
18 relying on and provide them with releases with respect to those
19 doctors.

20         How long will it take for you to decide which doctors
21 you're relying on?

22         MS. DONNELLY:  We had already discussed this, and we
23 said by the 5th.  Do you want that by the 5th?

24         THE COURT:  By the 5th, okay.

25         MS. DONNELLY:  Which is next Tuesday, Judge.

1          THE COURT: Okay.

2          MS. DONNELLY: So, I will provide the medical

3    treaters that had to do with her -- the sick building issue,

4    which are physical responses. And if there are any others that

5    any other medical treaters that treated her for what's termed

6    injury on duty because -- and those are all physical, they're

7    not psychological issues.

8          THE COURT: Okay. But --

9          MS. DONNELLY: So, I will provide those.

10         THE COURT: But, you know, like I said, I don't want

11   the defendants to be surprised. And I'm not going to permit

12   into evidence testimony regarding treatment that you're not

13   disclosing.

14         MS. DONNELLY: Yes.

15         THE COURT: So, you -- whatever you disclose and

16   whichever treaters you're going to rely on, you're going to be

17   bound by that and that's going to be the scope of it. But it's

18   my understanding that you're only talking about physical

19   injuries caused by the building which required her to leave.

20              However, defendants can ask of her whether she was

21   going through anything else. You can ask her in her deposition

22   if she was going through anything else, I have no problem with

23   that.

24         MS. HARPER: Just to confirm, she's not only going to

25   be revealing who she relied upon with respect to the sick

1   building issue, but she's going to be disclosing any physician

2   that she may have seen about the sick building issue.

3           So, for instance, that would include if she went to a

4   doctor but he wasn't favorable on the sick building issue, is

5   that right, Your Honor?

6           THE COURT:  That's correct.

7           MS. DONNELLY:  Yes.

8           MS. HARPER:  Okay.

9           MS. DONNELLY:  Yes, that's --

10          THE COURT:  That's right.

11          MS. DONNELLY:  That's perfectly acceptable.

12          THE COURT:  Okay.  Now, do you have the forms of

13  release available for her to sign?  Is it a standard form that

14  you use?

15          MS. COHEN:  I know the plaintiff has to sign and

16  notarize, we can certainly provide those to the plaintiff.

17          THE COURT:  Okay.  So after --

18          MS. COHEN:  We've offered that before.

19          THE COURT:  So, after she discloses the identity,

20  you'll provide the names and she'll provide you with signatures

21  within seven days thereafter, is that reasonable?

22          MS. DONNELLY:  Yes, um-hum.

23          MS. COHEN:  Just one clarification.

24          THE COURT:  Yes.

25          MS. COHEN:  Plaintiff did identify a doctor, and we

1  don't know who he was, and that's Dr. Potko (phonetic), I
2  believe.  We don't know under what circumstances the plaintiff
3  saw him and we don't -- so, if we can clarify that --

4         THE COURT:  Well, I'll ask counsel to clarify whether
5  or not Dr. Potko is still a doctor that you're going to be
6  relying on.  And let them know by August 5th.  You can discuss
7  that separately.

8         MS. DONNELLY:  I will.

9         MS. COHEN:  Thank you.

10        THE COURT:  Okay.  Thank you.  Anything else?

11        MS. HARPER:  I'm sorry to burden you with this, Your
12 Honor, but we had talked about plaintiff's dep proceeding on
13 August 4th and August 12th.  We just have like a month left in
14 discovery and now plaintiff is refusing to appear on days that
15 she doesn't have off work.  We have offered to excuse that
16 absence, but the City won't actually pay her from that absence.
17 We wouldn't be -- we had already volunteered to schedule her
18 dep months ago on a day she had off, but now we're put in a jam
19 and we're -- we've asked plaintiff's counsel to agree to
20 produce plaintiff on August 4th under those conditions.

21        THE COURT:  Which is what condition?

22        MS. HARPER:  Well, that we would excuse her from work
23 that day, but we won't pay her for that day.

24        THE COURT:  As opposed to an off day?

25        MS. HARPER:  Right.

1       THE COURT:  When's her next off day?

2       MS. HARPER:  She only has Tuesdays off and there is

3  one -- I am out of town those Tuesdays that she has, except for

4  August 12th, we could go forward.

5       THE COURT:  Well, I'm not sure why she -- I mean if

6  she's available every Tuesday, I'm not sure why she should bear

7  the financial burden of showing up on a day that's necessarily

8  the most convenient for you.  I mean you've got two attorneys

9  here.

10       MS. HARPER:  Well, Ms. -- I'm sorry, Ms. Cohen has

11  something else scheduled, plus we were bending over backwards.

12  We already tried to do this Tuesday to work out this issue in

13  June, and then she canceled.  So, numerous Tuesdays that would

14  have worked were passed up.

15       THE COURT:  Take her on August 12th and whatever the

16  next --

17       MS. HARPER:  Okay.

18       THE COURT:  -- available off date is.

19       MS. HARPER:  Okay.

20       THE COURT:  Even if it goes past the August 31st

21  cutoff.

22       MS. HARPER:  Okay.

23       THE COURT:  I mean I'm --

24       MS. HARPER:  And then the --

25       THE COURT:  Okay.  Does that work better --

1    MS. DONNELLY:  Yes.

2    THE COURT:  -- for your client?

3    MS. DONNELLY:  Thank you.

4    THE COURT:  Okay.

5    MS. HARPER:  And then we -- the City still has the

6 underlying merits of its rule to show cause, if we may be heard

7 on that.

8    THE COURT:  What's the underlying merits?

9    MS. HARPER:  Well, that we've been backed in by

10 plaintiff and not allowed to proceed on discovery.  We worked

11 out a lot of issues per this Court's guidance on that issue.

12 But we still think we are being significantly hampered as to

13 the emotional distress claim because --

14    THE COURT:  So, what do you want me to do?

15    MS. HARPER:  Well --

16    THE COURT:  Hold her in contempt?  Throw her in jail?

17 What do you want me to do?

18    MS. HARPER:  We would like you to bar her from

19 bringing any emotional distress evidence that she has not

20 disclosed to date.

21    THE COURT:  I think we've discussed that and I think

22 that's the effect of what we just talked about, that she will

23 not be able to rely upon medical testimony of emotional stress,

24 but she can obviously talk about how this whole situation has

25 impacted her.  That's typical in these cases without -- as long

1  as she's not claiming that she had to go see a psychiatrist or

2  other physician because of it.  She can talk about how this

3  impacted her.  And I'm not going to bar that.  I'm not going to

4  bar that.  You're able to inquire in her deposition about how

5  it's impacted her.  But if they want to go into medical

6  justification for it and show a causal link, then they have to

7  identify a medical witness and then you could depose that

8  medical witness.  If they don't rely upon a medical link, then

9  it's -- you know, her feelings are her feelings and a jury will

10  evaluate her feelings.

11         MS. HARPER:  And we had an interrogatory that asked

12  her emotional -- basis for her emotional distress which she

13  just answered on May the 30th.  So, we would like her to be

14  bound by that statement.

15         THE COURT:  No, you can ask her --

16         MS. HARPER:  Okay.

17         THE COURT:  -- in her deposition how this has

18  impacted her.  That's -- I mean emotional distress -- I don't

19  know how you can -- you know, I don't know how you put that

20  into an answer to interrogatory.  You can cover that in a

21  deposition.

22         Okay.  Anything else?

23         MS. HARPER:  No.

24         THE COURT:  Okay.

25         MS. HARPER:  Thank you.

1    THE COURT:  So, with respect to the defendant's Rule

2 37 motion for rule to show cause and to bar for failure to

3 comply, the motion is denied based on the agreements worked out

4 by the attorneys and by the Court's order today.  Very good.

5    MS. HARPER:  Thank you.

6    MS. DONNELLY:  Thank you.

7    (CONCLUSION 9:38 A.M.)

8

9

10    C E R T I F I C A T I O N

11

12    I, Karen Hartmann, certify that the foregoing is a

13 correct transcript to the best of my ability, from the

14 electronic sound recording of the proceedings in the above-

15 entitled matter.

16

17 _____            Date: August 8, 2003

18 TRANSCRIPTS PLUS

19

20

21

22

23

24

25